UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELBERT WELCH,

              Plaintiff,

v.

EZ LOAN AUTO SALES, EZ LOAN
AUTO SALES OF NIAGARA FALLS, EZ
LOAN AUTO REPRESENTATIVE TIM,
BUFFALO AUTO ACCEPTANCE
CORPORATION, and AMICA MUTUAL
INSURANCE COMPANY,

              Defendants.
_____

**DECISION AND ORDER**

1:18-CV-01168 EAW

## **INTRODUCTION**

Plaintiff Elbert Welch ("Plaintiff"), proceeding *pro se*, commenced this action in New York State Supreme Court, Niagara County, by filing a Summons and Complaint, both dated September 27, 2018, alleging that defendants EZ Loan Auto Sales, EZ Loan Auto Sales of Niagara Falls, EZ Loan Auto Representative Tim ("Tim"), Buffalo Auto Acceptance Corporation (collectively, "EZ Loan Defendants"), and Amica Mutual Insurance Company ("Amica") violated his civil rights pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and Article I, § 11 of the New York State Constitution, violated federal consumer protections laws, and committed various torts pursuant to New York state law. (Dkt. 1-1 at ¶¶ 23-32). Plaintiff's claims arise out of the purchase and finance of a vehicle from EZ Loan Defendants. (Dkt. 1-1). The action was removed to federal court on October 23, 2018. (*See* Dkt. 1).

Presently before the Court is the motion to dismiss brought by EZ Loan Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6) (Dkt. 3), and the motion to dismiss brought by Amica pursuant to Rule 12(b)(6) (Dkt. 8). For the reasons that follow, the Court grants Amica's motion (*id.*), and grants EZ Loan Defendants' motion (Dkt. 3).

## BACKGROUND

The following facts are taken from Plaintiff's Complaint. (Dkt. 1-1). As is required on motions such as these, the Court treats Plaintiff's allegations as true.

On August 30, 2017, Plaintiff, an African American man, purchased and financed a 2002 Dodge Grand Caravan Sport through EZ Loan Defendants. (*Id.* at ¶ 8). EZ Loan Defendants advertise that bad credit is not an issue when purchasing cars from them, but Plaintiff alleges that they used his credit score to limit him to lower cost vehicles because of his race. (*Id.* at ¶ 19). EZ Loan Defendants told Plaintiff that the vehicle had been inspected, was safe to drive, carried a 24 month or 24,000 mile Powertrain Warranty, a 6 month or 6,000 mile other-parts warranty, and would make it through the winter months. (*Id.* at ¶ 8). The car also had a New York State inspection sticker. (*Id.*).

The next day the vehicle would not start, so Plaintiff called "Tim" who told Plaintiff to take the car to the EZ Loan Service Drive. (*Id.* at ¶¶ 8, 10). The mechanic there told Plaintiff it needed a new starter and attempted to charge Plaintiff for the parts and labor. (*Id.* at ¶ 11). Plaintiff complained to EZ Loan Defendants about the charge, and the part was replaced for free. (*Id.*). Several days later Plaintiff found out that the "two front wheels were worn to the steel in them" and needed alignment. (*Id.* at ¶ 8). Plaintiff returned to

Service Drive for repairs, and while they attempted to make him pay again, the tires were replaced and aligned without charge. (*Id.* at ¶ 12). If Plaintiff had known about these problems beforehand, he would not have purchased the vehicle. (*Id.* at ¶ 13).

Plaintiff made payments of $300 per month to EZ Loan Defendants. (*Id.* at ¶ 14). In February of 2018, the car was totaled in an accident unrelated to the previously discussed defects. (*Id.* at ¶¶ 16-17). Plaintiff tried to buy another vehicle from EZ Loan Defendants, but his request for a loan to purchase a replacement vehicle was denied. (*Id.* at ¶ 16). After the accident, Plaintiff stopped making the $300 monthly payments. (*Id.* at ¶ 17). He "received threatening letters" and had telephone conversations where he was told he had to continue making his monthly payments, or else he would be reported and his credit score lowered. (*Id.* at ¶¶ 17-18). The bad credit reports have since been filed. (*Id.* at ¶ 18).

Plaintiff filed this action in New York State Supreme Court, Niagara County, on September 27, 2018. (Dkt. 1-1). On October 23, 2018, EZ Loan Defendants removed the action to this Court (Dkt. 1), and filed a motion to dismiss on October 30, 2018 (Dkt. 3). On November 2, 2018, Amica was served with the summons and complaint (Dkt. 8-1 at ¶ 12), and filed a motion to dismiss on November 16, 2018 (Dkt. 8). Plaintiff did not file a response to either motion.

In May 2019, it came to the Court's attention that an anti-litigation injunction had been put in place against Plaintiff on September 8, 2014. *Welch v. Hannigan*, No. 1:13-CV-00519-WMS, Dkt. 6 (W.D.N.Y. Sept. 8, 2014). The Court issued an order to show cause on May 15, 2019, ordering the parties to show cause in writing the reasons why this case should not be dismissed in light of the anti-litigation injunction. (Dkt. 10). Plaintiff

responded on June 7, 2019, and Amica responded on June 13, 2019. (Dkt. 13). EZ Loan Defendants submitted no response.

## DISCUSSION

### I. Legal Standards

#### A. 12(b)(1) & 12(h)(3) Motion to Dismiss

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court retains jurisdiction." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd*, 249 F. App'x 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Young v. United States*, No. 12-CV-2342 ARR SG, 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quotation omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## B. 12(b)(6) Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

When a plaintiff proceeds *pro se*, the Court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## II. Amica's Motion

Amica argues any claims against it should be dismissed because Plaintiff failed to outline a cause of action against it in the Complaint. (Dkt. 8-4 at 6-9). The Court finds dismissal is appropriate here for the reasons that follow.

Plaintiff named Amica as a defendant "solely to enable Plaintiff to effectively accomplish correcting [the] record to remove/expunge/provide to me copies of all reports/data etc. generated and maintained in records/computers" about the Dodge Grand Caravan. (Dkt. 1-1 at ¶ 33). Plaintiff does not seek monetary damages from Amica. (*Id.*).

Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). "[T]o ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper part[ies] to bring suit." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (alteration in original) (quotation omitted). Specifically, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark*, 572

U.S. at 125. A plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

Plaintiff has failed to establish standing against Amica. He does not allege that Amica caused him any injury. To the contrary, Plaintiff states that "no monetary damages as to [Amica] are sought." (Dkt. 1-1 at ¶ 33). It appears Plaintiff named Amica as a party to this lawsuit for the sole purpose of obtaining discovery for his claims against EZ Loan Defendants, not to adjudicate a claim against Amica. Such allegations are not sufficient to satisfy the standing requirement of Article III. Therefore, the Court dismisses all claims against Amica.

### III. <u>EZ Loan Defendants' Motion</u>

EZ Loan Defendants contend that Plaintiff's claims are subject to arbitration, and accordingly ask the Court to issue an order compelling arbitration and to either dismiss the complaint or stay the action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-4. EZ Loan Defendants have submitted an Arbitration Agreement signed by Plaintiff with their motion to dismiss. (Dkt. 3-1 at 9-12; Dkt. 3-2 at 9). In the alternative, EZ Loan Defendants move to dismiss Plaintiff's Complaint for failure to state a claim. (Dkt. 3-1 at 12).

The Second Circuit has acknowledged that "district courts in this Circuit have treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see, e.g.*, *Cupples v. Valic Fin. Advisors, Inc.*, No. 13-CV-4501(JS)(AKT), 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014) ("Insofar as Defendant seeks dismissal pursuant to Rule

12(b)(6), the Court considers the motion one to compel arbitration."); *75-07 Food Corp. v. Tr. of United Food and Commercial Workers Local 342 Health Care Fund*, No. 13-CV-5861 (JFB)(ARL), 2014 WL 691653, at *4 (E.D.N.Y. Feb. 24, 2014) ("Although styled as a motion to dismiss, the [Respondents'] motion also seeks an order compelling arbitration. Thus, '[f]or purposes of deciding the instant motion, the Court will do as a number of other courts have done and construe the Respondents' motion to dismiss as a motion to compel arbitration.'" (citation omitted) (quoting *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012))). Because EZ Loan Defendants seek an order compelling arbitration, the Court follows what other district courts have done in this Circuit and treats the instant motion as one to compel arbitration.

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia*, 834 F.3d at 229 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003). "Because the standard is akin to that on summary judgment, materials outside the pleadings may be considered." *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334 (S.D.N.Y. 2018), *appeal dismissed*, 2018 WL 7502896 (2d Cir. Dec. 12, 2018); *see Meyer v. Uber Techs.*, 868 F.3d 66 (2d Cir. 2017) (discussing that in a motion to compel arbitration, "the court consider[s] all relevant, admissible evidence submitted by the parties and contained

in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." (alterations in original) (quotation and citation omitted)). Accordingly, although the Arbitration Agreement is not attached to Plaintiff's Complaint or incorporated therein by reference, the Court will consider it for purposes of this motion. *See Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (treating the motion to dismiss as a motion to compel arbitration and considering the collective bargaining agreement and the arbitration clause contained within it even though the agreement was not attached to or referenced in the complaint).

Pursuant to the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The FAA reflects a liberal federal policy favoring arbitration agreements, and places arbitration agreements on the same footing as other contracts." *Meyer*, 868 F.3d at 73. When deciding whether an action should be arbitrated, the Second Circuit has instructed that a district court should do the following:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d 229. "[A] party is bound by the provisions of a contract that [he] signs, unless [he] can show special circumstances that would relieve [him] of such an obligation." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 328 (S.D.N.Y. 2014) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)). "In the context of evaluating whether 'special circumstances' sufficient to warrant relief from an arbitration agreement exist, 'the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Id.* (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). The Arbitration Agreement is an entirely separate, clearly titled document signed by Plaintiff (Dkt. 3-2 at 9), and Plaintiff has submitted no response to EZ Loan Defendants' motion. Because Plaintiff is a party to the Arbitration Agreement and has not met his burden of showing any special circumstances that warrant relief from it, the Court finds that the parties intended to arbitrate here. *See, e.g.*, *Marciano*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) ("[A] party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." (quoting *Patterson v. Somerset Inv'rs Corp.*, 96 A.D.3d 817, 817 (2d Dep't 2012))).

Once it has been established that an arbitration agreement exists, courts in this Circuit "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *State of New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996). "Where the

parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *Id.* at 62. "[D]oubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability." *Hartford Acc. and Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).

In the instant matter, Plaintiff's claims fall within the scope of the Arbitration Agreement. Plaintiff claims that he should not have to continue making monthly payments on the car because of the initial mechanical problems with the vehicle. (Dkt. 1-1 at ¶ 15). The Arbitration Agreement states:

> All claims, disputes, and controversies arising out of or relating in any way to the following: any problems with repair or operation of motor vehicle sold by the above and any problems relating to the finance of the vehicle, or any other problems that may arise, will to the fullest extent be resolved by binding arbitration administered by an accredited member of an arbitration organization. Binding arbitration does not apply to failure to pay by purchaser and will not prevent E-Z Loan Auto Sales from initiating collection procedures.

(Dkt. 3-2 at 9). While the Arbitration Agreement specifically exempts a "failure to pay" from arbitration, this exemption does not apply to Plaintiff's claim. The full sentence states that a failure to pay "will not prevent E-Z Loan Auto Sales from initiating collection procedures," indicating that the Arbitration Agreement only exempts collection lawsuits brought by EZ Loan Defendants, not lawsuits brought by Plaintiff.[1]

---

[1] Even if the arbitration agreement exempted more than collection lawsuits, it still does not apply to the instant matter. The use of the phrase "failure to pay" instead of a term such as "non-payment" indicates that the exemption applies to purchasers liable for

Plaintiff alleges several additional claims related to the initial purchase and finance of his car, including that he was limited to purchasing low-price vehicles because of his credit score despite EZ Loan Defendants' advertisements that bad credit "is not an issue" when purchasing cars from them, and that their acts were racially motivated. (Dkt. 1-1 at ¶ 19). Such claims are also covered by the Arbitration Agreement, which states that "any other problems that may arise" are subject to arbitration. (Dkt. 3-2 at 9); *see JLM Industries*, 387 F.3d at 172 ("[W]here the arbitration clause at issue is a broad one, it is presumptively applicable to disputes involving matters going beyond the 'interpret[ation] or enforce[ment of] particular provisions' of the contract which contains the arbitration clause." (alterations in original) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998), *abrogated on other grounds by Katz*, 794 F.3d 341)).

Next, the Court must consider whether Congress intended for Plaintiff's federal statutory claims to be non-arbitrable. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "[A]lthough all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of

---

the amount financed, whereas Plaintiff alleges that he has no liability to EZ Loan Defendants. *See Genesco*, 815 F.2d at 846 ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."). Moreover, as Plaintiff's claim also involves mechanical problems with the car, the applicability of this exemption is at best ambiguous, and the Court accordingly resolves any such doubt in favor of arbitrability.

judicial remedies for the statutory rights at issue." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (quotation omitted). The burden is on Plaintiff "to show that Congress intended to preclude a waiver of a judicial forum" for his claims. *Id.* Plaintiff has not responded to EZ Loan Defendants' motion or contention that his claims are subject to arbitration, let alone shown that Congress intended to preclude arbitration for any of his federal claims.[2] *See Washington v. William Morris Endeavor Entm't, LLC*, No. 10 Civ. 9647(PKC)(JCF), 2011 WL 3251504, at *10 (S.D.N.Y. July 20, 2011) (holding arbitration was appropriate because *pro se* plaintiff failed to show that Congress intended to preclude arbitration for his Title VII and § 1981 claims). Accordingly, the Court finds all of Plaintiff's claims are subject to arbitration.

While "courts have the discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated," *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001), *aff'd*, 91 F. App'x 702 (2d Cir. 2002),[3] the Court finds dismissal is

---

[2] Additionally, the Second Circuit has held that "[c]laims under Section 1981 . . . may be made subject to arbitration." *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016). The Court's research did not find a case discussing whether Congress intended for § 1985(3) to be subject to arbitration, and the Complaint does not specify which federal consumer protections statutes Plaintiff invokes. Given that the Supreme Court has stated that "even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions," *Green Tree Fin.*, 531 U.S. at 90, combined with Plaintiff's complete failure to respond to EZ Loan Defendants' motion and the strong federal policy favoring arbitration, the Court finds that all of Plaintiff's claims should be referred to arbitration.

[3] If all of the claims in an action have been referred to arbitration and a party requests a stay, the Second Circuit has held that the FAA mandates a stay of proceedings instead of dismissal. *Katz*, 794 F.3d at 347. Plaintiff has not requested a stay. Additionally, in his response to the Order to Show Cause, Plaintiff claims he previously requested that this case

appropriate here. An anti-litigation injunction against Plaintiff issued on September 8, 2014, permanently barring him from filing lawsuits in this District and barring actions naming Plaintiff as a party from being transferred to the Western District of New York. *See Welch v. Hannigan*, No. 1:13-CV-00519-WMS, Dkt. 6 at 5 (W.D.N.Y. Sept. 8, 2014). In light of this anti-litigation injunction, the Court will exercise its discretion and dismiss the instant matter. Plaintiff may instead air his grievances in the forum to which he consented: arbitration.

Accordingly, the Court grants EZ Loan Defendants' motion to dismiss. (Dkt. 3).

## **CONCLUSION**

For the foregoing reasons, the Court grants Amica's motion to dismiss (Dkt. 8), and grants EZ Loan Defendants' motion to dismiss (Dkt. 3). The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 18, 2019
Rochester, New York

---

be remanded to state court. (Dkt. 11 at ¶ 9). However, the Court received no such request—Plaintiff's response to the Order to Show Cause is the first filing by Plaintiff on the docket.